**IN THE UNITED STATES DISTRICT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **VITTI LABS, LLC, VITTI CORPORATE, LLC, GOLD PRAIRIE DISTRIBUTION, LLC** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.: 4:24-cv-264** ) ) |
| **THE REGENERATIVE PROJECT, LLC d/b/a PLATINUM BIOLOGICS, MICHAEL "BEEBEN" RUSSELL** | ) ) ) ) |
| **Defendants.** | ) **JURY TRIAL DEMANDED** ) |

## VERIFIED COMPLAINT

Plaintiffs Vitti Labs, LLC ("Vitti Labs"), Vitti Corporate, LLC ("Vitti Corporate"), and Gold Prairie Distribution, LLC ("Gold Prairie") (collectively referred to as "Vitti" or "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants The Regenerative Project, LLC d/b/a Platinum Biologics ("Platinum Biologics") and Michael "Beeben" Russell ("Mr. Russell") (collectively, referred to as "Defendants"), hereby state and allege the following:

## INTRODUCTION

1.      This lawsuit was precipitated by Defendants' deliberate efforts to mislead and misinform the public concerning Vitti's capabilities and capacities as a leading provider of human cellular and tissue-based products ("HCT/Ps"). Rather than compete fairly and honestly, Defendants have chosen to resort to attempting to torch Vitti's reputation. Although Defendants describe themselves as "patient advocates," they are actually competitors to Vitti with the goal of damaging Vitti's reputation in the marketplace.

2.     Vitti and Defendants are in the business of developing, manufacturing, distributing, marketing, selling, and/or offering for sale HCT/Ps.

3.     Vitti and Defendants are competitors in the HCT/Ps industry. Defendants have struggled to fairly obtain business in the industry and have now resorted to unfair and illegal tactics to obtain business.

4.     Vitti works to provide HCT/Ps that have been registered with the Food and Drug Administration ("FDA") and comply with the FDA requirements for Section 361 HCT/Ps as regulated under 21 C.F.R. § 1271.10(a). Vitti Labs is accredited by the American Association of Tissue Banks ("AATB") as a 361 HCT/P manufacturer and provides these products for human clinical use to qualified medical professionals. Vitti has invested significant resources and time in developing, manufacturing, patenting, marketing, and selling HCT/Ps and technologies related thereto. It is Vitti's mission to provide medical providers and professionals with a comprehensive portfolio of bio-ethically manufactured HCT/Ps to support their patients' quality of life.

5.     In contrast to Vitti's business model and products offered for sale, Defendants market their facility as being "FDA-registered and a multi-state licensed tissue bank providing high-quality natural biologics to clinicians nationwide;" however, Defendants sell HCT/Ps labeled as *research use only* ("RUO") to medical practitioners for *human clinical use*. Use of RUO products is only appropriate in *in vitro* studies or animal studies. RUO products are *not* suitable for human use.

6.     In efforts to divert attention away from Defendants' own inappropriate conduct, Defendants have concocted a devious scheme to spread false statements, descriptions, and representations regarding Vitti to the public at-large and to Vitti's Sales Representatives and Customers. These false statements, descriptions, and misrepresentations falsely claim that Vitti is

unreliable, dishonest, not creditable, and are conducting themselves in a nefarious manner, not compliant with applicable laws and regulations. **These statements are wholly false.**

7.     As an example of Defendants' devious scheme to mislead and misinform the public, Defendants have posted a video titled "Vitti Labs – Is VittiLabs An Imaginary 361 HCTP Product?" ("Video At-Issue") on LinkedIn, Facebook, and Loom that is accompanied by a written summary and statement, as further discussed below. The false statements, descriptions, and representations contained in the Video At-Issue and accompanying written summary and statement misrepresents the nature, characteristics, and qualities of Vitti's business operations and products.

8.     Defendants have also schemed to interfere with Vitti's Sales Representatives and Customers and/or solicit them by contacting them and asserting false statements, descriptions, and representations about Vitti, such as those found in the Video At-Issue and accompanying written summary and statement.

9.      Defendants' false statements, descriptions, and representations about Vitti and Defendants' interference with Vitti's Sales Representatives and Customers violate federal and state law and Vitti's rights.

10.     Defendants' actions have caused Vitti to unfairly lose sales and profits, and also to suffer damage to its reputation, goodwill, business relationships, and customer confidence.  Prior to Defendants' actions, Vitti held a fairly and properly obtained competitive advantage in the marketplace. Now, though, Vitti's business value has suffered in some unquantifiable ways. Vitti's Sales Representatives and Customers have repeatedly inquired about the Video At-Issue and the false statements, descriptions, and representations made therein and have expressed their concern about the quality and certification of HCT/Ps provided by Vitti.

3

11.     Unless enjoined, Defendants' false statements will cause further irreparable damage to Vitti's goodwill, reputation, and market reputation and cause further Sales Representatives and Customers to stop doing business with Vitti.

12.     This action is necessary to protect Vitti's sales, reputation, goodwill, business relationships, customer confidence, competitive advantage, and business value. Vitti seeks, among other remedies, injunctive relief (i) enjoining Defendants from making further false statements, descriptions, and representations about Vitti and (ii) ordering the removal of the Video At-Issue and the accompanying written summary and statement from all online platforms and/or forums.

## NATURE OF THE ACTION

13.     This is a civil action to enjoin and remedy: false advertising under the Lanham Act, 15 U.S.C. § 1125 *et seq.* and Missouri common law unfair business competition, injurious falsehood, defamation, and tortious interference with a contract and a business expectancy.

14.     This action arises out of Defendants' false statements, descriptions, and representations regarding Plaintiffs.

## PARTIES

15.     Plaintiff Vitti Labs, LLC is a Missouri corporation having its principal place of business at 834 W. Kansas St., Suite C, Liberty, Missouri 64068. Vitti Labs is an industry leading developer and manufacturer of human cellular and tissue-based products, HCT/Ps.

16.     Plaintiff Vitti Corporate, LLC is a Missouri corporation having its principal place of business at 4741 Central St., Suite 484, Kansas City, Missouri 64112. Vitti Corporate is in the business of marketing, selling, and offering for sale HCT/Ps.

4

17.     Plaintiff Gold Prairie Distribution, LLC is a Missouri corporation having its principal place of business at 118 Conistor St., Suite B #420, Liberty, Missouri 64068. Gold Prairie is a distributor of HCT/Ps.

18.     Upon information and belief, Defendant The Regenerative Project, LLC d/b/a Platinum Biologics is a Florida corporation having its principal place of business at 1516 E. Colonial Dr., Suite 103, Orlando, Florida 32803. On information and belief, Platinum Biologics is engaged in the business of marketing, buying, selling, and offering for sale HCT/Ps, either on its own or through its agents.

19.     Defendant Michael "Beeben" Russell is a Texas resident residing in Aubrey, Texas and/or Dallas, Texas and, at all times relevant herein, was acting as an officer or agent of Platinum Biologics.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over the claims in this Complaint under 28 U.S.C. §§ 1331 & 1332, in that the cause of action involves a question of federal law, and is a civil action between citizens of different states wherein the subject matter in controversy exceeds the sum or value of $75,000, exclusive of interests or costs.

21.     This Court has personal jurisdiction over Defendants because Defendants:

   a.     Engage in continuous and systematic business activities within the State of Missouri and this District, such as rendering, offering for sale, and selling products and/or services to Missouri-based customers within Missouri and this District;

   b.     Regularly solicit business in Missouri and this District, deriving substantial revenue from interstate commerce, the State of Missouri, and this District;

   c.     Have purposely directed substantial activities at the residents of Missouri

and this District, including Vitti, by means of their false statements, descriptions, and representations regarding Vitti, as further described herein, thereby causing injury to Vitti within the State of Missouri and this District;

d.  Have committed and directed their willful, tortious conduct described herein at entities and persons located in Missouri and this District, including Vitti, which has caused Vitti to suffer injury in the State of Missouri and this District.

22.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) & (3) because a substantial part of the events giving rise to the claims complained of herein, including Defendants' false statements, descriptions, and representations, are directed at Plaintiffs, which are situated in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### A. BACKGROUND

#### *Vitti's Background*

23.  Philipp R. Vitti ("Mr. Vitti") founded Plaintiff Vitti Labs in 2019. Mr. Vitti possesses a strong motivation to help others due to his personal journey with medical issues, having been born with a genetic defect known as pectus excavatum.

24.  Mr. Vitti has battled this condition all of his life. At the age of five years old, Mr. Vitti underwent his first cardio thoracic surgery, which left him disabled and "sickly" for many years.

25.  In his twenties, Mr. Vitti underwent a second surgery, and then developed pulmonary hypertension and had developed fibrotic tissue due to his condition over the years as well as heart complications. These compounding medical issues challenged him every day as there were no cures – just the reality of more surgeries and medical procedures.

26.     Realizing very early in life that there was no cure for pectus excavatum or the impact it inflicted on his life, Mr. Vitti knew he had a progressive disease that would eventually leave him in a wheelchair and likely on oxygen, thereby affecting his quality of life and lifespan.

27.     Mr. Vitti is a problem solver and innovator – having been referred to as a "serial inventor and entrepreneur." His personal battle with medical issues, combined with his acumen as a businessman and chemist, enabled Mr. Vitti to have a unique perspective and flow of ideas that led him to research biological materials that could make positive impacts on his disease. His desire to help not just himself but others affected by the disease was a true calling.

28.     Mr. Vitti discovered the possibilities existing with birth tissue and founded Vitti Labs. Eventually he built an organization to research and develop products for those impacted by diseases for which there are no cure. He wanted children to enjoy their childhoods and adults to enjoy quality time with their children, and he knew firsthand the difference he could make to improve the quality of life for all people affected by his disease.

29.     Mr. Vitti's research led to the ethical development and manufacture of birth tissue implantable products that can be used commercially, as well as the development of medical drugs currently undergoing human trials with the hope to one day bring them to the market. All of this propels his desire to continue to work to find a cure for pulmonary fibrosis and other respiratory diseases.

30.     Vitti Labs has taken great care to ensure that its commercial products available today are human cells, tissues, or cellular or tissue-based products (HCT/Ps) as defined in 21 C.F.R. § 1271.3(d), meet all of the criteria listed in 21 C.F.R. § 1271.10(a), and are therefore regulated solely under section 361 of the Public Health Service ("PHS") Act, 42 U.S.C. 264.

31.     Human cells, tissues, and cellular and tissue-based products (HCT/Ps) are defined by 21 C.F.R. § 1271.3(d).

32.     HCT/Ps that meet 21 C.F.R. § 1271.10(a), are known as "361 HCT/Ps" and consist of human cells, tissues, and cellular and tissue-based products intended for implantation, transplantation, infusion or transfer into a human recipient as described in the FDA July 2020 Guidance: "Regulatory Considerations for Human Cells, Tissues, and Cellular and Tissue-Based Products: Minimal Manipulation and Homologous Use."

33.     The FDA regulates a 361 HCT/Ps solely if it meets certain criteria established by the FDA, including the following:

a.      The HCT/P is minimally manipulated;

b.      The HCT/P is intended for homologous use only, as reflected by the labeling, advertising, or other indications of the manufacturer's objective intent;

c.      The manufacture of the HCT/P does not involve the combination of the cells or tissues with another article, except for water, crystalloids, or a sterilizing, preserving, or storage agent, provided that the addition of water, crystalloids, or the sterilizing, preserving, or storage agent does not raise new clinical safety concerns with respect to the HCT/P; and

d.      Either one of the following:

i.      The HCT/P does not have a systemic effect and is not dependent upon the metabolic activity of living cells for its primary function; or

ii.     The HCT/P has a systemic effect or is dependent upon the metabolic activity of living cells for its primary function, and

a)  Is for autologous use;

b) Is for allogeneic use in a first-degree or second-degree blood relative; or

c) Is for reproductive use.

34. FDA regulations of 361 HCT/Ps must establish registration, and consist of the following: Current Good Tissue Practice ("cGTP") and establish and maintain a quality program intended to prevent the introduction, transmission, or spread of communicable disease through the manufacture and use of HCT/Ps. This includes donor eligibility (donor screening and testing), storing, processing, packaging, labeling, and distribution processes and procedures that maintain a quality program to monitor facility, environmental controls, equipment, supplies and reagents, recovery, processing and process controls, storage, labeling controls, requirements to receipt, pre-distribution shipment, and distribution, donor eligibility determinations, donor screenings, and donor testing, adverse reaction reporting. Premarket review (licensure, clearance, and approval) by the FDA is not required for 361 HCT/Ps.

35. Vitti Labs is in the business of manufacturing 361 HCT/Ps for commercial use. Vitti Labs is accredited with the American Association of Tissue Banks (AATB), registered with the FDA, and certified under the Current Good Manufacturing Practice ("cGMP") regulations enforced by the FDA.

36. To become accredited and certified by the AATB, Vitti Labs must undergo stringent examination of their processes and procedures to show they are in compliance with the AATB standards.

37. Vitti Labs' interaction with the FDA and compliance with its regulations is ongoing. Vitti Labs' AATB accreditation is in good standing. Since 2021, Vitti Labs has been inspected by the FDA twice and the AATB three times. Accordingly, Vitti Labs is in compliance

9

to provide 361 HCT/Ps to physicians and other health care providers as a compliant FDA establishment and AATB accredited tissue bank, and Vitti Labs only provides 361 HCT/Ps which have met the qualifications for commercial use in humans. 361 HCT/P products manufactured by Vitti Labs are distributed nationwide.

38.     Vitti Corporate is in the business of selling 361 HCT/Ps. Vitti Corporate was established in March 2022. Vitti Corporate is responsible for establishing a sales network to sell Vitti Labs products.

39.     Gold Prairie is in the business of being a medical distribution company. Gold Prairie was established in February 2023.

40.     Plaintiffs contract and work with one another in order to bring the 361 HCT/Ps that Vitti Labs sells for human use to the market for medical providers and professionals to purchase. Plaintiffs have invested significant resources and time in developing, manufacturing, patenting, marketing, and selling 361 HCT/Ps and technologies related thereto. It is Plaintiffs' mission to provide medical providers and professionals with a comprehensive portfolio of bio-ethically manufactured 361 HCT/Ps to support their patients' quality of life.

41.     Plaintiffs pride themselves in the work provided and adhere to five guiding principles:

      a.   Believing research is invaluable.

      b.   Engaging in peer, physician, and patient collaboration.

      c.   Respecting and upholding regulatory guidelines through a proactive culture.

      d.   Establishing and following rigorous protocols and procedures to ensure quality and safety.

      e.   Proving their processes with above industry standard testing by third-party labs.

*Defendants' Profile*

42.     Platinum Biologics markets, buys, sells, and offers for sale HCT/Ps, either on its own or through its agents. Platinum Biologics considers itself one of Plaintiffs' competitors in the HCT/Ps industry.

43.     Through Platinum Biologics' website at URL **Error! Hyperlink reference not valid.**, a true and accurate screenshot is attached hereto as **Exhibit A**, Platinum Biologics markets its facility as being "FDA-registered and a multi-state licensed tissue bank providing high-quality natural biologics to clinicians nationwide."

44.     However, Platinum Biologics sells HCT/Ps labeled as research use only (RUO) to medical practitioners for clinical use. Platinum Biologics' products are not registered with the FDA as HCT/Ps nor do they have a biologics drug license. In addition, use of RUO products is only appropriate in *in vitro* studies or animal studies. RUO products are not suitable for human use.

45.     Michael "Beeben" Russell is employed by Platinum Biologics as its Chairman of the Executive Board and, at all times relevant herein, was acting as an authorized agent and representative of Platinum Biologics. A true and accurate screenshot of Mr. Russell's LinkedIn profile at URL  https://www.linkedin.com/in/beeben-russell-64175470/  is attached hereto as **Exhibit B**.

B.  **THE VIOLATIVE CONDUCT OF PLATINUM BIOLOGICS AND MR. RUSSELL**

46.     On or around March 13, 2024, Platinum Biologics, acting through Mr. Russell, uploaded a video titled "Vitti Labs – Is VittiLabs An Imaginary 361 HCTP Product?" (Video At-Issue) on the third-party video website platform called Loom at URL https://www.loom.com/share/af7a84c7c70248e3a96d7f641a5b115d, a true and accurate screenshot is attached hereto as **Exhibit C**.

47.     On or around March 14, 2024, Mr. Russell posted the Video At-Issue on his personal Facebook account at URL https://www.facebook.com/ beeben.russell, a true and accurate screenshot is attached hereto as **Exhibit D**.

48.     On or around March 20, 2024, Mr. Russell posted the Video At-Issue on his LinkedIn account at URL https://www.linkedin.com/feed/update/urn:li:activity: 7174157603713753088/, a true and accurate screenshot is attached hereto as **Exhibit E**.

49.     The Video At-Issue posted on the various online platforms is viewable to anyone who has access to the Internet, including those viewers located in Missouri and this District.

50.     Through the Video At-Issue, Mr. Russell makes various false statements, descriptions, and representations about Plaintiffs. These statements, descriptions, and representations suggests to the viewer that Plaintiffs are unreliable, dishonest, not creditable, and are conducting themselves in a nefarious manner.

51.     Such false statements, descriptions, and representations that Mr. Russell makes in the Video At-Issue about Plaintiffs include, but are not limited to, the following:

- Equating Plaintiffs to the mob selling drugs "out the back door" of an Italian restaurant;
- Plaintiffs are not licensed to sell their products;
- Plaintiffs do not "have an address" and have "no products, no nothing."
- Plaintiffs have "got 50 million dollars-worth of research being done, at least. No PhD, no published studies, just poof right?"
- Plaintiffs are "selling supplements out the back door. Seems to be a lot of out the back door…"
- "So understanding this, it's not a good idea [for Plaintiffs] to basically call themselves a drug manufacturer and then, in the same sentence, tell everyone that [Plaintiffs] are the only 361 tissue company and [Plaintiffs] are the only one in the United States that has this approval or recognition or whatever you want to call it, right, to sell human cell and tissue products while the other side of [Plaintiffs'] mouth, all [Plaintiffs are doing] and saying is [Plaintiffs have] a 100 millions of dollars in poof, magic air research being done in, like what, a 1000 square foot facility that no one has any pictures."

- "So [Plaintiffs say] they're the only 361, but yet the FDA gave them a public warning letter saying [Plaintiffs] are not a 361."

- "And when you look and you see that [Plaintiffs] have split up the company, this is Vitti Labs, LLC. There's also Vitti Corporate which is Ryan Kuczen. He's actually put together an outside distributor force and I don't even think Vitti actually sells the products for Vitti the lab. And you have to wonder why would [Plaintiffs] complicate change of custody so far like that. I mean, you know the obvious answer to that, right? Or at least in my opinion, the answer would be is [Plaintiffs] is "look over here" and not "over here," or moving liability, or hiding. You know, there is a lot of things that could be said to that but once again, there's a lot of weird stuff here."

- "Think about the malpractice, there's a claim and they go "Oh well [Plaintiffs] have a public warning letter. [Plaintiffs] also, the change of custody where the products ordered from is not "here." Who's going to take responsibility? Who has insurance behind that, right?" I would be a little worried because that's really the problem behind a warning letter and someone just not being honest about their intentions of what they're actually doing."

52.     Such statements are wholly false and meant to damage Plaintiffs.

53.     As noted above, Plaintiffs meet or exceed all regulatory guidelines for the manufacture and sale of their products. There is zero factual basis in equating Plaintiffs with the "mob" selling drugs out the back door of an Italian restaurant or to even insinuate that Plaintiffs are somehow improperly manufacturing and selling products.

54.     Vitti has never claimed that it is the "only" registered Section 361 provider as Defendants' falsely state. As noted herein, it is _**a**_ registered Section 361 provider, not the _**only**_ registered Section 361 provider.

55.     Similarly, the FDA warning letter did not determine Vitti that it is not a registered Section 361 provider nor are its products unlawfully being sold. The FDA has never given determination that Vitti Labs' commercial products are not 361 HCT/Ps or taken any action to stop Vitti Labs from selling their products.

56.     Plaintiffs have always registered their products with the FDA if required by applicable law. Since receiving the FDA warning letter, Plaintiffs have registered their products

with the FDA pursuant to Section 361 multiple times. The FDA has accepted and renewed the registration of Plaintiffs' products each time.

57.     The reasons for separating Vitti Labs, Vitti Corporate, and Gold Prairie are for business operational purposes. Plaintiffs are not attempting to hide liability as the video states. The business organization has no impact on malpractice insurance for either Plaintiffs' or their medical provider clients.

58.     Defendants' statements about potential effect on the malpractice insurance for Plaintiffs' customers are meant to plant the seeds of fear in Plaintiffs' customers and to make them believe that business dealings with Plaintiffs may impact their malpractice insurance rates or coverage.

59.     Such false statements that the corporate structure somehow nullifies Plaintiffs' malpractice insurance are made to scare Plaintiffs' current and prospective customers and sales representatives with the intention of interfering with the relationship between Plaintiffs and their customers and sales representatives.

60.     The Video At-Issue posted on Loom includes a summary that states "Video Disclaimer Below - Credit : Brandon Spencer" (*see* Exhibit C), which is further damaging and inaccurate as the individual Brandon Spencer ("Mr. Spencer") is a sales representative, independently contracted, for Gold Prairie.

61.     Such a misrepresentation suggests to the viewer that one of Gold Prairie's sales representatives had assisted in the making of and/or provided information included in the Video At-Issue and that such statements, descriptions, and representations that Mr. Russell makes in the Video At-Issue are truthful and reliable when in fact they are not.

62. Along with posting the Video At-Issue, Mr. Russell includes the following written statement in his posts on Facebook and LinkedIn:

> Vitti Labs! Is Vitti Labs an Imaginary 361 HCTP Product? Is Vitti Labs a Drug manufacture?
>
> Lately we've seen some WILD claims coming from Vitti Labs. Who isn't suppose to be selling product, and kind of doesn't anymore.. But they do? What does this mean for you? What does this mean for your malpractice?
>
> These are only my opinions please see the video for full disclaimer.

*See* Exhibits D and E. This statement also contains false statements, descriptions, and representations about Plaintiffs.

63. As noted above Vitti is fully complies with state and federal laws to sell its products. Defendants assert that "[Vitti] isn't supposed to be selling product…] falsely claims that a regulatory agency has forced Vitti to stop selling product, which is false.

64. As noted above, Plaintiffs' corporate structure has no bearing on malpractice insurance for either Plaintiffs or their medical professional customers. Such statements are meant to interfere with Plaintiffs' relationships with its customers and sales representatives.

65. The statements made by Mr. Russell in the Video At-Issue and accompanying written summary and statement were not his "opinions" but were statements and accusations he purported to be as fact and Mr. Russell made the statements with intent to hurt Plaintiffs.

66. Upon information and belief, in addition to these false statements, Defendants have contacted Plaintiffs' sales representatives ("Plaintiffs' Sales Representatives") and other individuals and entities, including Plaintiffs' customers and/or potential customers ("Plaintiffs' Customers"), further asserting false statements, descriptions, and representations about Plaintiffs, such as those found in the Video At-Issue and accompanying written summary and statement.

67.     Unfortunately, Mr. Russell's actions are not unique to Plaintiffs as Mr. Russell and Platinum Biologics appear to have a history of tortiously interfering with the business of other companies in the industry and soliciting customers of those companies.

68.     On April 18, 2023, Mr. Russell's prior employer Row1 Inc. d/b/a Regenerative Labs ("Regenerative Labs") sued Mr. Russell, Platinum Biologics, Mr. Russell's brother Marcus Russell, and other individuals ("Florida case"). *See Row 1 Inc. v. Michael Russell et al.*, Circuit Court of the First Judicial Circuit in and for Escambia, County, Florida, Case No. 2023 CA 001747, Complaint (Filing #171270150). for breach of contract regarding non-compete and non-solicitation clauses between Regenerative Labs and Mr. Russell. *Id*. Regenerative Labs also sued Platinum Biologics for tortious interference. *Id*. It is alleged that after Mr. Russell and the other named defendant individuals resigned from Regenerative Labs, Mr. Russell and the other individuals formed the competing venture fictitiously named Platinum Biologics, the legal business name being The Regenerative Project, LLC. *Id*. Regenerative Labs further alleges that Mr. Russell, Platinum Biologics, and the other individuals did or attempted to solicit customers and sales representatives of Regenerative Labs. *Id*.

## C. <u>IRREPARABLE HARM TO PLAINTIFFS</u>

69.     Plaintiffs' Sales Representatives and Customers are located both inside and outside of the state of Missouri and this District.

70.     Plaintiffs have contracts and/or valid business relationships with their Sales Representatives and Customers, where Plaintiffs, respectively, (1) engaged and/or expected to engage with Plaintiffs' Sales Representatives so that the Sales Representatives would solicit orders for HCT/P products from prospective and existing customers and (2) provided and/or expected to provide Plaintiffs' Customers with HCT/P products.

71.     Plaintiffs' Sales Representatives and Customers have repeatedly inquired about the Video At-Issue and the false statements, descriptions, and representations made therein, and have expressed their concern about the quality and certification of HCT/Ps provided by Plaintiffs. In one given week, after Defendants' posting of the Video At-Issue, Plaintiffs had at least 5 of their customer accounts inquire about the false statements, descriptions, and representations made by Defendants.

72.     By asserting false statements, descriptions, and representations about Plaintiffs to Plaintiffs' Sales Representatives and Customers, such as those found in the Video At-Issue and accompanying written summary and statement, Defendants have intentionally interfered with Plaintiffs' contracts and business relationships with Plaintiffs' Sales Representatives and Customers while having knowledge of said contracts and business relationships.

73.     As a result of Defendants' tortious interference with Plaintiffs' contracts and business relationships with Sales Representatives and Customers, some of Plaintiffs' Sales Representatives and Customers have stopped doing further business with Plaintiffs, and Plaintiffs expect that other Sales Representatives and Customers may stop doing further business with Plaintiffs.

74.     Defendants' actions have harmed Plaintiffs' reputation in the marketplace, including causing irreparable damage to Plaintiffs' reputation and perception among its customers and sales representatives.

75.     Plaintiffs believe they have lost sales as a result of Defendants' posting of the Video At-Issue and accompanying written summary and statement and other conduct of Defendants involving similar false statements, descriptions, and representations regarding Plaintiffs as those found in the Video At-Issue and accompanying written summary and statement.

76.     Furthermore, as a result of Defendants' posting of the Video At-Issue and accompanying written summary and statement and other conduct of Defendants involving similar false statements, descriptions, and representations regarding Plaintiffs, Plaintiffs' reputation, goodwill, business relationships, customer confidence, competitive advantage, and business value has suffered in unquantifiable ways that would be impossible to ascertain.

## COUNT I
## FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

77.     Plaintiffs repeat the allegations in the preceding paragraphs as though fully set forth herein.

78.     Defendants' statements, descriptions, and representations about Plaintiffs, such as those made in the Video At-Issue and accompanying written summary and statement, to the public-at-large, Plaintiffs' sales representatives, and Plaintiffs' customers and/or potential customers constitute false or misleading statements regarding Plaintiffs.

79.     Defendants' use of false or misleading representations of fact in commercial advertising or promotion or solicitation misrepresents the nature, characteristics, and/or qualities of Plaintiffs' business operations and products.

80.     Defendants' use of false or misleading representations of fact has the tendency to deceive a substantial portion of the targeted consumer audience, or actually deceive the target consumers.

81.     Defendants' false or misleading representations of fact are material in that they are likely to influence purchasing decisions of the target consumers.

82.     Defendants' false or misleading representations of fact concern Plaintiffs' HCT/Ps and/or other products, which are advertised, promoted, sold, and distributed in interstate commerce.

83. Plaintiffs have been and continue to be damaged and injured by Defendants' false or misleading representations of fact through diversion of sales and/or loss of goodwill.

84. Defendants knew that the representations of fact were false or misleading.

85. Defendants' false or misleading representations of fact were made in bad faith and malice or reckless indifference to Plaintiffs' and consumers' interests.

86. Defendants' bad faith, false or misleading representations of fact regarding Plaintiffs and Plaintiffs' business operations and products makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

87. Defendants continue to make false or misleading representations of fact regarding Plaintiffs and Plaintiffs' business operations and products and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

88. Plaintiffs are entitled to damages, including an award of Defendants' profits earned from the sale of HCT/Ps that resulted from Defendants' false statements, descriptions, and representations about Plaintiffs; any damages sustained by Plaintiffs; and the costs of this action pursuant to 15 U.S.C. § 1117.

89. Defendants' conduct was intentional, wanton, and in complete disregard of Plaintiffs' rights in that Defendants knew their statements were false or had reckless disregard for their falsity, entitling Plaintiffs to punitive damages.

**COUNT II**
**UNFAIR COMPETITION UNDER MISSOURI COMMON LAW**

90. Plaintiffs repeat the allegations in the preceding paragraphs as though fully set forth herein.

91. Defendants' statements, descriptions, and representations about Plaintiffs, such as those made in the Video At-Issue and accompanying written summary and statement, to the public-

at-large, Plaintiffs' sales representatives, and Plaintiffs' customers and/or potential customers constitute misrepresentations regarding Plaintiffs and Plaintiffs' business operations and products.

92.     Defendants knew that the representations of fact were false or misleading.

93.     Defendants' misrepresentations were calculated to deceive consumers under the ordinary conditions which prevail in the HCT/Ps industry.

94.     Defendants' false or misleading representations of fact will have the natural and probable result of deceiving a portion of the target consumer audience.

95.     Defendants' false or misleading representations of fact were made in bad faith and malice or reckless indifference to Plaintiffs' and consumers' interests.

96.     Plaintiffs have been and continue to be damaged and injured by Defendants' false or misleading representations of fact through diversion of sales and/or loss of goodwill.

97.     Defendants' conduct was intentional, wanton, and in complete disregard of Plaintiffs' rights in that Defendants knew their statements were false or had reckless disregard for their falsity, entitling Plaintiffs to punitive damages.

## COUNT III
## INJURIOUS FALSEHOOD UNDER MISSOURI COMMON LAW

98.     Plaintiffs repeat the allegations in the preceding paragraphs as though fully set forth herein.

99.     Defendants have published false statements, descriptions, and representations about Plaintiffs through the posting of the Video At-Issue and accompanying written summary and statement.

100.    Defendants' statements, descriptions, and representations about Plaintiffs are harmful to the interests of Plaintiffs.

101.    Defendants intended for the publication of the false statements, descriptions, and representations about Plaintiffs to harm Plaintiffs; or Defendants recognized or should have recognized that the publication of the false statements, descriptions, and representations is likely to result in harm to Plaintiffs.

102.    Defendants knew that their statements, descriptions, and representations about Plaintiffs were false, or Defendants had reckless disregard of the truth or falsity of their statements, descriptions, and representations about Plaintiffs.

103.    As a result of Defendants' actions, Plaintiffs have suffered pecuniary loss, including diversion of sales and/or loss of goodwill.

104.    Defendants' conduct was intentional, wanton, and in complete disregard of Plaintiffs' rights in that Defendants knew their statements were false or had reckless disregard for their falsity, entitling Plaintiffs to punitive damages.

**COUNT IV**
**DEFAMATION UNDER MISSOURI COMMON LAW**

105.    Plaintiffs repeat the allegations in the preceding paragraphs as though fully set forth herein.

106.    Defendants have published defamatory statements, descriptions, and representations about Plaintiffs and identified Plaintiffs through the posting of the Video At-Issue and accompanying written summary and statement. Upon information and belief, Defendants have also made similar defamatory statements regarding Plaintiffs and their sales representatives both verbally and textually to Plaintiffs' sales representatives, customers, and/or potential customers.

107.    Defendants' defamatory statements, descriptions, and representations about Plaintiffs misrepresent the nature, characteristics, and/or qualities of Plaintiffs' business operations and products.

108. Defendants' defamatory statements, descriptions, and representations about Plaintiffs are false and Defendants knew that their statements, descriptions, and representations about Plaintiffs were false, or Defendants had reckless disregard of the truth or falsity of their statements, descriptions, and representations about Plaintiffs.

109. Plaintiffs have been and continue to be damaged and injured by Defendants' defamatory and false statements, descriptions, and representations about Plaintiffs through diversion of sales and/or loss of goodwill.

110. Defendants' conduct was intentional, wanton, and in complete disregard of Plaintiffs' rights in that Defendants knew their statements were false or had reckless disregard for their falsity, entitling Plaintiffs to punitive damages.

**COUNT V**
**TORTIOUS INTERFERENCE WITH  CONTRACT**
**UNDER MISSOURI COMMON LAW**

111. Plaintiffs repeat the allegations in the preceding paragraphs as though fully set forth herein.

112. Plaintiffs contract with Plaintiffs' Sales Representatives and Customers, where Plaintiffs, respectively, (1) engaged with Plaintiffs' Sales Representatives so that the Sales Representatives would solicit orders for HCT/P products from prospective and existing customers and (2) provided Plaintiffs' Customers with HCT/P products.

113. Defendants were aware of Plaintiffs' Sales Representatives and Customers that had contracted with Plaintiffs.

114. Defendants contacted Plaintiffs' Sales Representatives and Customers and asserted false statements, descriptions, and representations about Plaintiffs, such as those found in the Video At-Issue and accompanying written summary and statement, to Plaintiffs' Sales Representatives and Customers.

22

115.    By asserting false statements, descriptions, and representations about Plaintiffs, such as those found in the Video At-Issue and accompanying written summary and statement, to Plaintiffs' Sales Representatives and Customers, Defendants intentionally interfered with Plaintiffs' contract with Plaintiffs' Sales Representatives and Customers.

116.    As a result of Defendants' tortious interference with Plaintiffs' contracts with Plaintiffs' Sales Representatives and Customers, Defendants have induced or caused Plaintiffs' Sales Representatives and Customers to cancel their contracts with Plaintiffs, or Plaintiffs expect Plaintiffs' Sales Representatives and Customers to cancel their contracts with Plaintiffs.

117.    There exists no justification for the actions of Defendants in inducing or causing Plaintiffs' Sales Representatives and Customers to cancel their contracts with Plaintiffs.

118.    But for the conduct of Defendants, Plaintiffs' Sales Representatives and Customers would have continued their existing contractual relationship with Plaintiffs.

119.    Plaintiffs have been and continue to be damaged and injured by Defendants' tortious interference with Plaintiffs' contracts with Plaintiffs' Sales Representatives and Customers through diversion of sales and/or loss of goodwill.

120.    Defendants' conduct was willful and malicious with the intent to harm Plaintiffs and Defendants' actions were done without justification, entitling Plaintiffs to punitive damages.

### COUNT VI
### TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY UNDER MISSOURI COMMON LAW

121.    Plaintiffs repeat the allegations in the preceding paragraphs as though fully set forth herein.

122.    Plaintiffs maintain business relationships with numerous Plaintiffs' Sales Representatives and Customers where Plaintiffs, respectively, validly expected to (1) engage with Plaintiffs' Sales Representatives so that the Sales Representatives would solicit orders for HCT/P

products from prospective and existing customers and (2) provide Plaintiffs' Customers with HCT/P products.

123. Defendants were aware of Plaintiffs' Sales Representatives and Customers that have business relationships with Plaintiffs.

124. Defendants contacted Plaintiffs' Sales Representatives and Customers and asserted false statements, descriptions, and representations about Plaintiffs, such as those found in the Video At-Issue and accompanying written summary and statement, to Plaintiffs' Sales Representatives and Customers.

125. By asserting false statements, descriptions, and representations about Plaintiffs, such as those found in the Video At-Issue and accompanying written summary and statement, to Plaintiffs' Sales Representatives and Customers, Defendants intentionally interfered with Plaintiffs' business relationships with Plaintiffs' Sales Representatives and Customers.

126. As a result of Defendants' tortious interference with Plaintiffs' business relationships with Plaintiffs' Sales Representatives and Customers, Defendants have induced or caused Plaintiffs' Sales Representatives and Customers to cease business relationships with Plaintiffs, or Plaintiffs expect Plaintiffs' Sales Representatives and Customers to cease business relationships with Plaintiffs.

127. There exists no justification for the actions of Defendants in inducing or causing Plaintiffs' Sales Representatives and Customers to cease business relationships with Plaintiffs.

128. But for the conduct of Defendants, Plaintiffs' Sales Representatives and Customers would have continued their business relationship with Plaintiffs and Plaintiffs, respectively, would have (1) engaged with Plaintiffs' Sales Representatives so that the Sales Representatives would

solic orders for HCT/P products from prospective and existing customers and (2) provided Plaintiffs' Customers with HCT/P products.

129. Plaintiffs have been and continue to be damaged and injured by Defendants' tortious interference with Plaintiffs' contracts with Plaintiffs' Sales Representatives and Customers through diversion of sales and/or loss of goodwill.

130. Defendants' conduct was willful and malicious with the intent to harm Plaintiffs and Defendants' actions were done without justification, entitling Plaintiffs to punitive damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court enter judgment in their favor and against Defendants on all claims as follows:

a) Granting preliminary and permanent injunctive relief immediately enjoining Mr. Russell and Platinum Biologics and its officers, agents, employees, and all persons or entities in active concert or participation with it, from making further false statements, descriptions, and representations about Plaintiffs;

b) Granting preliminary and permanent injunctive relief immediately ordering the removal of the Video At-Issue and the accompanying written summary and statement from all online platforms and/or forums;

c) Awarding all damages to Plaintiffs allowable under the law, together with pre-judgment and post-judgment interest thereon;

d) Finding this case to be an exceptional case pursuant to 35 U.S.C. § 285;

e) Increasing the amount of damages awarded to Plaintiffs to three times the amount found or assessed by this Court because of the willful and deliberate nature of Defendants' acts, pursuant to 15 U.S.C. § 1117(a);

f) Awarding to Plaintiffs their reasonable attorneys' fees incurred in this action to the extent allowed by law;

g) Awarding to Plaintiffs their costs incurred in this action;

h) For any other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

Dated: April 12, 2024.
                                        Respectfully submitted,

                                        POLSINELLI PC


                                        By: _Jay E. Heidrick_
                                            Jay E. Heidrick (MO #54699)
                                            Eric E. Packel (MO #44632)
                                            Pat Woolley (MO #46632)
                                            900 W. 48th Place
                                            Suite 900, Kansas City, MO 64112
                                            (816) 753-1000
                                            Fax No: (816) 753-1536
                                            jheidrick@polsinelli.com
                                            epackel@polsinelli.com
                                            pwoolley@polsinelli.com

                                        *Attorneys for Plaintiffs Vitti Labs, LLC, Vitti
                                        Corporate, LLC, Gold Prairie Distribution, LLC*

**IN THE UNITED STATES DISTRICT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**KANSAS CITY DIVISION (WESTERN DIVISION)**

| | |
|---|---|
| **VITTI LABS LLC, VITTI CORPORATE,** ) | |
| **LLC, GOLD PRAIRIE DISTRIBUTION,** ) | |
| **LLC** ) | |
| ) | |
| **Plaintiff,** ) | **Case No.:** |
| ) | |
| **v.** ) | |
| ) | |
| **THE REGENERATIVE PROJECT, LLC** ) | |
| **d/b/a PLATINUM BIOLOGICS,** ) | |
| **MICHAEL "BEEBEN" RUSSELL** ) | |
| ) | |
| **Defendants.** ) | |

## VERIFICATION

I, Philipp R. Vitti, make the following declaration under oath:

1.      I am an adult citizen over 18 years of age and otherwise competent to make this declaration. This declaration is based upon my personal knowledge.

2.      I am the Founder, Co-Owner, and Chief Science Officer of Plaintiffs Vitti Labs LLC ("Vitti Labs") in the above-entitled action.

3.      I have read the foregoing VERIFIED COMPLAINT and know the contents thereof; and the same is true of my knowledge, except as those matters which are therein stated upon my information and belief, and as to those matters, I believe it to be true.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing testimony is true and correct to the best of my knowledge and information.

Dated: April 12, 2024

_____

FOUNDER, CO-OWNER, AND CSO OF
VITTI LABS, LLC